**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID GLEN HEARD,

     Petitioner-Appellant,

v.

MIKE ADDISON, Warden,

     Respondent-Appellee.

No. 12-5060

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:09-CV-00065-CVE-PJC)**

O. Dean Sanderford, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, (at the time of briefing) with him on the brief), Denver, Colorado, for Petitioner-Appellant.

Keeley L. Miller, Assistant Attorney General (E. Scott Pruitt, Attorney General of Oklahoma, with him on the briefs), Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **LUCERO, EBEL,** and **HOLMES,** Circuit Judges.

**EBEL**, Circuit Judge.

David Glen Heard pled guilty to two counts of "knowingly and intentionally . . . [l]ook[ing] upon . . . the body or private parts of [a] child under sixteen . . . in [a] lewd and lascivious manner," in violation of Oklahoma's lewd molestation statute, Okla. Stat. tit. 21, § 1123(A)(2). In pleading guilty, Heard admitted that he positioned himself in a Tulsa Wal-Mart store so as to be able to "look under [their] clothes at [their] bod[ies] and at [their] undergarments." Aplt. App. Supp. Vol. I at 12, 15. Pursuant to the terms of the plea agreement, the prosecutor recommended that Heard receive concurrent twenty-five-year prison terms, and the court sentenced Heard accordingly.

Soon after he was sentenced, Heard discovered an unpublished case out of the Oklahoma Court of Criminal Appeals ("OCCA"), Robinson v. State, No. F-98-724 (Okla. Crim. App. July 29, 1999), which cast doubt upon whether Heard's conduct fell within the ambit of § 1123(A)(2). We agree with Heard that his attorney provided ineffective assistance in failing to advise him of viable defenses to the charges against him, and the record is clear that, but for counsel's deficient performance, Heard would not have pled guilty to these offenses. Therefore, having jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we REVERSE the district court's denial of Heard's habeas petition and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

### I.     Factual history

David Glenn Heard was arrested in an Oklahoma Wal-Mart after he followed two minors into the store and "positioned [him]self in such a way as to be able to look under

their dresses." Aplt. App. Vol. I at 60. The State charged Heard with two counts of lewd molestation under Okla. Stat. tit. 21, § 1123(A)(2), which makes it a crime to "knowingly and intentionally . . . [l]ook upon, touch, maul, or feel the body or private parts of any child under sixteen (16) years of age in any lewd and lascivious manner," where "the accused is at least three (3) years older than the victim." The parties and the Oklahoma state sentencing judge agreed that in Heard's case, each count carried a minimum penalty of twenty years' imprisonment and a maximum of life.

On the advice of his lawyer, a Tulsa County public defender, Heard pled guilty to both counts in exchange for the prosecutor's recommendation that he receive twenty-five-year sentences on each, to be served concurrently. As part of the deal, the prosecutor also agreed to move to strike from the Information three prior felony convictions for burglary and two of three prior felony convictions related to a 1999 incident involving a sexual act with a minor. At the plea hearing, Heard admitted that he "position[ed] [him]self in the Wal-Mart store to look under [the girls'] clothes at [their] bod[ies] and at [their] undergarments." Aplt. App. Supp. Vol. I at 12, 15. The judge granted the prosecutor's motions to strike five of Heard's six prior felony convictions, and he accepted Heard's pleas. In accordance with the prosecutor's recommendation, Heard was sentenced to concurrent twenty-five-year terms.

Then, about a month after he was sentenced, Heard received a visit from Kevin Adams, a private attorney who had become aware of Heard's case. Adams believed that an unpublished case out of the Oklahoma Court of Criminal Appeals ("OCCA"),

3

Robinson v. State, No. F-98-724 (Okla. Crim. App. July 29, 1999), suggested that the conduct for which Heard was convicted fell outside the ambit of § 1123(A)(2).

In Robinson, the OCCA reversed the conviction of a man who had been prosecuted under § 1123(A)(2) for directing his thirteen-year-old stepdaughter, who was wearing both underwear and boxer shorts, to "spread her legs," and then "staring" between them. Aplt. App. Vol. I at 69-70. The Robinson court found the defendant's actions "disgusting, repugnant, immoral, and unacceptable," but it suggested that a lewd molestation conviction predicated on "look[ing] upon," see Okla. Stat. tit. 21, § 1123(A)(2) (criminalizing "[l]ook[ing] upon, touch[ing], maul[ing], or feel[ing] [a minor's] body or private parts"), would ordinarily require something on the order of nudity: the court reasoned that "[w]hile the statute does not say 'naked body' or 'naked private parts,' we believe the pairing of the word 'body' with the term 'private parts' indicates the legislature intended something more than the act of staring between the legs of someone who is wearing both underwear and boxer shorts . . . ." Aplt. App. Vol. I at 69. According to Heard, this was the first time he had been made aware of the prospect of a viable defense in his case.

After learning of Robinson, Heard immediately signed a release enabling Adams to access his file. Heard also wrote to the Oklahoma public defender's office—the same office that employed his first lawyer—looking for help. Unfortunately for Heard, his Robinson discovery had come several weeks too late for him to withdraw his guilty pleas or file a direct appeal. See Okla. Ct. Crim. App. R. 4.2(A), (D) (providing for a ten-day

4

period within which a defendant can file a motion to withdraw his plea, the denial of which is directly appealable). But Heard shortly received a letter from appellate public defender Stephen Greubel, who acknowledged the "app[arent] . . . error on [Heard's] trial lawyer's part," id. at 98, and Greubel agreed to prepare Heard's application for post-conviction relief for him.

## II.      Procedural history

Heard unsuccessfully sought post-conviction relief in the state courts on the grounds that his conviction under § 1123(A)(2) had deprived him of his Fourteenth Amendment right to due process and that he had been denied his Sixth Amendment right to effective assistance of counsel. In denying Heard relief, the OCCA expressly disapproved its prior reasoning from Robinson and a similarly decided unpublished case, Terry v. State, SR-2003-0276 (Okla. Crim. App. Mar. 30, 2004).

Heard then filed his pro se 28 U.S.C. § 2254 habeas petition in the United States District Court for the Northern District of Oklahoma. Heard v. Addison, No. 09-CV-0065-CVE-PJC, 2012 WL 1081166, at *2 (N.D. Okla. Mar. 28, 2012). The district court denied Heard's petition on all grounds, and we granted a Certificate of Appealability on two issues: (1) whether Heard's due process rights under the Fourteenth Amendment were violated by his conviction under Okla. Stat. tit. 21, § 1123(A)(2) as construed, and (2) whether Heard received ineffective assistance of counsel in violation of the Sixth Amendment. We now turn to address Heard's claims.

5

## DISCUSSION

### I.      Review of Heard's claims under AEDPA

Where the state courts have adjudicated a habeas petitioner's claims on the merits, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, tit. I, § 104 (1996) ("AEDPA"), provides for habeas relief only if the state court's decision (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  But "[i]f a [habeas] claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), we may exercise our independent judgment in deciding the claim."  Battenfield v. Gibson, 236 F.3d 1215, 1220 (10th Cir. 2001).  "We review de novo the district court's legal analysis of the state court decision."  Turrentine v. Mullin, 390 F.3d 1181, 1189 (10th Cir. 2004).

### II.      Heard's due process claims

Heard's first two claims are rooted in his right to due process under the Fourteenth Amendment: Heard argues that (1) he was deprived of his right to due process when the Oklahoma sentencing judge accepted his guilty plea without a sufficient factual basis for convicting him under Okla. Stat. tit. 21, § 1123(A)(2); and (2) the OCCA's interpretation of that statute was so arbitrary and capricious that it violated Heard's due process rights.

6

**A.** **Heard's claim that his due process rights were violated when the state court convicted him without a sufficient factual basis**

Heard's first due process claim centers on his contention that the Oklahoma sentencing judge accepted Heard's guilty pleas without a sufficient factual basis for convicting him. Specifically, Heard claims that although § 1123(A)(2) does not explicitly require that the victim's "body" or "private parts" be unclothed, "even . . . a layperson" would have recognized that the statute's text requires "something more than the act of looking under the skirt of someone who is wearing underw[ear]." Aplt. App. Vol. I at 8. Thus, Heard argues, his admission that he "look[ed] at the undergarments" of the two girls was "<u>not</u> in violation of the statute charged."[1] Id.

We must defer to the Oklahoma state courts on their interpretation of Oklahoma's law. See Burleson v. Saffle, 278 F.3d 1136, 1144 (10th Cir. 2002); accord Anderson-Bey v. Zavaras, 641 F.3d 445, 448 (10th Cir. 2011) ("Even if we believe that the state courts misinterpreted state law in upholding a defendant's convictions, it is not the province of a

---

[1] Based on the same reasoning, Heard also appears to advance a freestanding "actual innocence" claim. The Supreme Court has not yet resolved whether such a freestanding claim might entitle a petitioner to relief. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013). But the "threshold showing for such a right would be extraordinarily high." House v. Bell, 547 U.S. 518, 520 (2006). We are confident that a case such as this one—where the state's high court has determined on the same evidence and arguments before us that the petitioner is guilty of the crime charged—is not what the Court had in mind. Cf. Herrera v. Collins, 506 U.S. 390, 417 (1993) (suggesting that compelling enough newly discovered evidence might satisfy the freestanding actual innocence threshold).

7

federal habeas court to reexamine state-court determinations on state-law questions." (internal quotation marks omitted)). This rule applies with equal force to interpretations of state law "announced on direct appeal of the challenged conviction." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In this case, the OCCA held that "[u]nder the plain wording of the statute, Heard committed the felony when he followed two underage girls into a store and positioned himself so as to see under their dresses and see their panties, his admitted intent." Heard v. State, 201 P.3d 182, 183 (Okla. Crim. App. 2009) (emphasis added). The OCCA's interpretation of Oklahoma's lewd molestation statute in this case, as a matter of state law, is insulated from our review.

**B.** **Heard's claim that the OCCA's interpretation of the lewd molestation statute was so arbitrary and capricious that it violated due process**

The Supreme Court has intimated that, "in rare circumstances, a determination of state law can be so arbitrary or capricious as to constitute an independent due process . . . violation." Lambert v. Workman, 594 F.3d 1260, 1264 (10th Cir. 2010) (internal quotation marks omitted). We do not reach that issue in this case, however, because even liberally construing Heard's federal habeas petition as we must, see United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002), we conclude that Heard never raised such a claim, in his petition or otherwise, before the federal district court. On this failure, Heard offers no explanation, and we perceive no exceptional circumstances that would cause us to "deviate from the general rule that we do not address arguments presented for the first

time on appeal." Id.; accord Parker v. Scott, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition.").

### C. Conclusion on Heard's due process claims

In conclusion, Heard's first due process claim is foreclosed on the basis that it involves a state court's interpretation of state law, and we do not reach whether the OCCA's interpretation of the lewd molestation statute was "so arbitrary or capricious as to constitute an independent due process . . . violation," Lambert, 594 F.3d at 1264, because Heard did not raise that claim in his federal habeas petition, and we do not consider arguments raised for the first time on appeal.

### III. Heard's claims for ineffective assistance of counsel

"The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel." Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984); Hill v. Lockhart, 474 U.S. 52, 57 (1985). This inquiry "is necessarily linked to the practice and expectations of the legal community." Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). But "[a] fair assessment of

9

attorney performance requires [us] . . . to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Second, a defendant must prove prejudice:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. That requires a "substantial," not just "conceivable," likelihood of a different result.

Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland and Harrison v. Richter, 131 S.Ct. 770, 786 (2011)) (internal quotation marks and citations omitted). In the context of a plea agreement, prejudice means a "reasonable probability" that the defendant "would not have pleaded guilty and would have insisted on going to trial" but for counsel's errors. Hill, 474 U.S. at 58-59.

Throughout the course of his state and federal post-conviction proceedings, Heard has advanced two separate theories of ineffective assistance of counsel. The first relates to counsel's allegedly deficient performance in advising Heard to plead guilty; the second relates to counsel's failure to consult with Heard about the possibility of filing an appeal. But both derive from counsel's failure to disclose to Heard the existence of viable defenses he could have asserted to the charges against him under Oklahoma's lewd molestation statute. More specifically, both theories are rooted in Heard's claim that his lawyer should have discovered and told him about the only two cases (albeit unpublished ones) on the OCCA's books at the time Heard entered his pleas that addressed the scope of § 1123(A)(2) as it applies to "looking upon" the "body or private parts" of a minor

10

child, which was the textual basis upon which Heard was charged and, ultimately, convicted.  See Robinson v. State, No. F-98-724 (Okla. Crim. App. July 29, 1999); Terry v. State, SR-2003-0276 (Okla. Crim. App. Mar. 30, 2004).  We find that the OCCA's reasoning in both of these cases (and the factual similarities between Heard's case and Robinson in particular) suggests that the cases would have provided Heard with a powerful defense to culpability under § 1123(A)(2).

In Robinson, the OCCA reversed the conviction of a man who had been convicted under § 1123(A)(2) for directing his thirteen-year-old stepdaughter, who was wearing both underwear and boxer shorts, to "spread her legs," which he then "star[ed]" between. Aplt. App. Vol. I at 69-70 & n.1.  The court reasoned that, "while the statute does not say 'naked body' or 'naked private parts,' we believe the pairing of the word 'body' with the term 'private parts' indicates the legislature intended something more than the act of staring between the legs of someone who is wearing both underwear and boxer shorts, even under the circumstances set forth in this case." Id. at 69.  In spite of the fact that the OCCA caveated that "we are not saying a conviction could never be had under this statute where a defendant is looking upon a clothed or partially clothed victim in a lewd and lascivious manner," id. at 69-70, we think the defendant's conduct in Robinson— ordering his stepdaughter to spread her legs so he could stare between them—was in some ways more intrusive than Heard's act of positioning himself so as to be able to see his victims' panties without their knowledge.  In any event, in our view Robinson is squarely on point: the defendant there committed an act that, like Heard's, enabled him to

11

see his victims' clothed "private parts," which would not otherwise have been exposed in such a manner. The OCCA held there that this conduct was <u>not</u> covered by §1123(A)(2).

In <u>Terry</u>, the OCCA held that secretly filming clothed minors in public for sexual gratification did not violate § 1123(A)(2). Aplt. App. Vol. I at 78. Again, the OCCA reasoned that "[w]e believe the pairing of the word 'body' with the term 'private parts' indicates the legislature intended something more than the act of filming clothed girls in a public location." <u>Id.</u> Importantly, the OCCA then concluded that "[e]ven though Appellee may have had lascivious intent and his actions may offend common decency, the actions are not a crime under the statute." <u>Id.</u> While <u>Terry</u> is more readily factually distinguishable from Heard's case than <u>Robinson</u> because the <u>Terry</u> defendant viewed parts of the minors they exposed to the public (whereas Heard's viewing was done in a more invasive, less consented manner and was far more offensive in nature), <u>Terry</u> nonetheless reinforces the rule, first articulated in <u>Robinson</u>, that when the Oklahoma legislature "pair[ed] the word 'body' with the term 'private parts,'" in the context of a "look[ing] at" charge, it "intended something more" than the statute's plain text suggests.

In denying Heard post-conviction relief, however, the OCCA for the first time disapproved <u>Robinson</u> and <u>Terry</u>'s reasoning and retrenched to what it deemed a "plain wording" construction of the lewd molestation statute. <u>Heard</u>, 201 P.3d at 183. The OCCA held that, under a proper reading of the statute, Heard's admitted conduct was clearly criminal; therefore, Heard's ineffective-assistance claims also lacked merit. <u>Id.</u> Heard argues that (1) the OCCA's disposition of his ineffective-assistance claims was

12

either "contrary to or an unreasonable application of" <u>Strickland</u>, because the OCCA did not assess counsel's performance in view of the circumstances at the time of counsel's alleged error; and (2) under a proper application of <u>Strickland</u>, Heard was deprived of his Sixth Amendment right to counsel, at both the guilty-plea and appellate stages of his case. We address each claim in turn.

**A.    Whether the OCCA's disposition of Heard's claims for ineffective assistance of counsel is entitled to AEDPA deference**

The OCCA rejected both of Heard's ineffective-assistance claims in a published opinion focused almost entirely on whether Heard's admitted conduct fell within the ambit of § 1123(A)(2). The court retrenched from its holdings in <u>Robinson</u> and <u>Terry</u>, characterizing them as "inconsistent with [the OCCA]'s interpretation and application of Section 1123 in 'touching' cases where a requirement of nudity is not attached to the same words." <u>Heard</u>, 201 P.3d at 183 (collecting cases). Concluding that the statute does not "require the body or private parts to be looked upon . . . to be 'naked,'" but rather that the focus of a court's inquiry should be on "the showing that the defendant's knowing and intentional conduct was 'lewd or lascivious,'" the OCCA held that "[u]nder the plain wording of the statute, Heard committed the felony when he followed two underage girls into a store and positioned himself so as to see under their dresses and see their panties, his admitted intent." <u>Id.</u> The court then concluded that "[s]ince we have found Heard's conduct falls within the ambit of the crime charged, his claims of ineffective assistance of counsel . . . have no merit." <u>Id.</u> at 183-84.

13

Because the OCCA resolved Heard's claims on their merits, "[o]ur review of the [OCCA's] decision is [ordinarily] . . . 'doubly deferential.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at counsel's performance, [as directed under Strickland, see 466 U.S. at 689] through the deferential lens of § 2254(d)." (internal quotation marks and citation omitted)). However, in this case, Heard argues that we should not give the extra deference that AEDPA requires us to give to the state court's resolution of his claims because the OCCA's resolution of those claims was either contrary to or an unreasonable application of clearly established Supreme Court precedent. We agree that in this case the extra AEDPA deference that would ordinarily be given to the OCCA is not appropriate.

"A state-court decision is 'contrary to' [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Court's] cases . . . ." Early v. Packer, 537 U.S. 3, 8 (2002) (internal quotation marks omitted). Because the OCCA cited no federal law when it rejected Heard's ineffective-assistance claims, we ask whether "the reasoning [or] the result of the [OCCA's] decision" contradicted the Court's decision in Strickland v. Washington. Id. Importantly, Strickland requires the reviewing court to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690 (emphasis added).

We hold that the OCCA's reasoning did contradict Strickland, because the OCCA improperly relied on hindsight when it rejected Heard's ineffective-assistance claims.

14

Specifically, the OCCA held that Heard's ineffective-assistance claims lacked merit "[s]ince [it] found Heard's conduct falls within the ambit of the crime charged," Heard, 201 P.3d at 182-83 (emphasis added), as that crime was construed by the OCCA after Heard pled guilty in this case.

We imagine that in many cases, a state high court's post-conviction determination that a defendant's conduct fell within a statute's ambit will reflect well-settled law at the time the defendant was convicted; in those instances, Strickland is not offended by a conclusion such as the one the OCCA reached here. Cf., e.g., Willingham v. Mullin, 296 F.3d 917, 934 n.6 (10th Cir. 2002). However, in this case, the OCCA's pronouncement on the law represented a marked departure from the only available law on the books at the time Heard pleaded guilty. Indeed, the OCCA recognized as much when, in reaching its conclusion that Heard's conduct fell within the scope of the statute, the court addressed and abrogated critical countervailing reasoning from the only two on-point cases (albeit unpublished ones) that the OCCA had decided before Heard entered his guilty pleas. See Heard, 201 P.3d at 183 (characterizing "the reasoning in Robinson and Terry," which construed the lewd molestation statute to require "something more" than lewdly looking at a clothed minor, as "inconsistent with" the court's "touching" cases, "where a requirement of nudity is not attached to the same words"); see also Aplt. App. Vol. I at 128 (Brief of State of Oklahoma before the OCCA) (arguing that Terry and Robinson were "wrongly decided," and asking the OCCA to overrule them). In

15

abrogating its reasoning in <u>Robinson</u> and <u>Terry</u>, the OCCA abrogated a credible defense that was available to Heard at the time he entered his pleas.

In light of the changes in the law between when Heard pled guilty and when the OCCA rejected his ineffective-assistance claims, we hold that when the OCCA offered, as its sole basis for rejecting Heard's ineffective-assistance claims, its contemporaneous determination that Heard's conduct was criminal under the statute, it necessarily employed hindsight. In so doing, it rendered a decision "mutually opposed to a maxim of law as stated by the Supreme Court,"[2] <u>Valdez v. Ward</u>, 219 F.3d 1222 (10th Cir. 2000). Thus, we apply <u>Strickland</u> de novo in this case. See <u>Phillips v. Workman</u>, 604 F.3d 1202, 1213 (10th Cir. 2010) (applying de novo review where the OCCA's analysis was contrary to clearly established Supreme Court law).

### B. Whether counsel was ineffective for failing to advise Heard that his conduct might have fallen outside the ambit of § 1123(A)(2)

### 1. Whether counsel's performance was deficient

Heard argues that his lawyer's performance was deficient because she advised him to plead guilty to the lewd molestation charges without ever informing him that he could

---

[2] The State concedes that the OCCA dismissed Heard's claims on <u>Strickland</u>'s performance prong. But even if the OCCA had dismissed Heard's claims on <u>Strickland</u>'s prejudice prong, we would conclude that doing so was an "unreasonable application of" <u>Strickland</u> because giving the OCCA the benefit of hindsight under either prong would be "at such tension with [<u>Strickland</u>'s "as of the time" rule] . . . as to be unreasonable," <u>Maynard v. Boone</u>, 468 F.3d 665, 671 (10th Cir. 2006); <u>accord</u> <u>Strickland</u>, 466 U.S. at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards <u>that govern the decision</u>." (emphasis added)).

16

assert a defense that his conduct was not criminal under the statute.[3]   This claim

implicates both counsel's duty to investigate the law and counsel's duty to discuss

possible defenses with her client.[4]

A criminal defense lawyer has a duty to conduct reasonable investigations into her

client's case, which extends to the law as well as the facts.  See Strickland, 466 U.S. at

690-91.  As that duty pertains to investigation of the law, we have previously observed in

an unpublished opinion that "counsel is obligated to research relevant law to make an

informed decision whether certain avenues will prove fruitful."  United States v.

Demeree, 108 F. App'x 602, 605 (10th Cir. 2004) (unpublished).  The American Bar

Association also suggests that "[u]nder no circumstances should defense counsel

recommend to a defendant acceptance of a plea unless appropriate investigation and

study of the case has been completed, including an analysis of controlling law and the

evidence likely to be introduced at trial."  ABA Standards for Criminal Justice,

---

[3] Both the Oklahoma trial court and the district court below denied Heard's
request for an evidentiary hearing in this case.  However, as a factual matter, we accept as
true Heard's claim that counsel never informed him of the availability of such a defense,
because Heard asserted that fact in a sworn affidavit that he appended to both his state
and federal habeas petitions, and the State has never disputed it.

[4] In our discussion that follows, we integrate both counsel's duty to investigate the
law and counsel's duty to advise the client of the results of that research, because both
duties require a common analysis of the standards to be expected of minimally competent
counsel and the causation question of whether counsel's breach of one or both of those
duties likely caused the defendant to plead guilty when, had counsel not breached one or
both of those duties, the defendant would likely have pled not guilty and insisted on trial.
That is, the breach of either counsel's duty to research or her duty to advise would have,
in this case, led to the same inadequately informed decision by Heard to plead guilty and
therefore unknowingly to waive his constitutional right to a trial.

17

Prosecution Function and Defense Function [hereinafter "Standards for Criminal Justice"] 4-6.1(b) (3d ed. 1993); see also Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (describing the ABA's standards as "valuable measures of the prevailing professional norms of effective representation"). The extent to which counsel will be obligated to research the law in order to perform at a constitutionally adequate level of competency will vary case by case: as the Supreme Court observed in Strickland, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. But "[a] decision not to investigate cannot be deemed reasonable if it is uninformed." Fisher v. Gibson, 282 F.3d 1283, 1296 (10th Cir. 2002).

Quite apart from the failure to discover the OCCA's unpublished decisions in Robinson and Terry, we hold that, on this record, minimally competent counsel would have recognized a likely defense based on the statute's text and the OCCA's failure to provide a permissible narrowing construction in its published cases. To obtain a conviction under the lewd molestation statute, the OCCA has held that the State must prove that "the defendant (1) was at least three years older than the victim, (2) knowingly and intentionally, (3) looked upon, touched, mauled, or felt (4) the body or private parts (5) of any child under sixteen years of age, and (6) in a lewd or lascivious manner." Heard, 201 P.3d at 182-83. In this case, Heard's admitted conduct only implicated the "looked upon" possibility within the third element of the crime. Minimally competent

18

counsel would have realized that, without "something more," see Robinson, Aplt. App. Vol. I at 69, such as a requirement that the minor's "body or private parts" be unclothed, the statute's sweep would extend to dance recitals, community pools, shopping malls— the list goes on—with only an officer's personal judgment as to the lewdness of a glance as a limiting principle. A minimally competent lawyer would have identified that such unbridled police discretion in enforcing the law makes a statute constitutionally suspect.

Having reached such a conclusion, any minimally competent lawyer would then have turned to case law to determine whether the OCCA had somehow limited the statute's reach in the "looked upon" context. A basic search of Oklahoma cases involving "lewd molestation" or the specific statutory provision, Okla. Stat. tit. 21, § 1123(A)(2), would have revealed "'touching' cases where a requirement of nudity is not attached to [the 'body or private parts' element]," Heard, 201 P.3d at 183 (collecting cases), but none involving the "looked upon" provision under which Heard was charged. And, because "looked upon" is both much broader and more ambiguous than "touching," a reasonable attorney would expect—and certainly would argue—that the mere requirement of a lascivious subjective intent in a touching case would not by itself be a sufficiently limiting factor in a "looked upon" context. At this point, having found no narrowing construction of the statute's "looked upon" hook by the OCCA, we think minimally competent counsel would have recognized the possibility of asserting viable defenses to culpability under the statute—including a facial constitutional challenge, see

19

Kolender v. Lawson, 461 U.S. 352, 357 (1983), or an argument for a narrowing construction, see Robinson, Aplt. App. Vol. I at 68.

Here, Heard's argument of ineffective counsel is even stronger. We agree with Heard that, under the circumstances of this case, minimally competent counsel would have discovered the OCCA's unpublished opinions in Robinson and Terry, two cases which, as we have already explained, would have provided Heard with a powerful argument that his conduct was not criminal under § 1123(A)(2). The Supreme Court has been reticent to address how "prevailing professional norms" might take into account local practices and rules of conduct. See Strickland, 466 U.S. at 716 (Marshall, dissenting) (criticizing the majority's "prevailing professional norms" standard because, e.g., it does not make clear whether "the standard of performance mandated by the Sixth Amendment var[ies] by locale"). However, in at least one case, the Court has looked to "professional standards that prevailed in [a state]" to determine whether a lawyer's investigation passed constitutional muster. See Wiggins v. Smith, 539 U.S. 510, 524 (2003). "[A] context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," id. at 523 (emphasis added) (internal quotation marks omitted), can, we think, take into account counsel's local practice environment and the resources available to her, insofar as those reflect the "prevailing professional norms" in her state. Of course, a defendant's Sixth Amendment right to counsel will never turn wholly on a particular office's practices, which may themselves either be deficient or surpass prevailing professional norms. However, the resources available to and

20

expectations of a lawyer in a state's Public Defender's office can offer some evidence of prevailing professional norms for defense attorneys in a state.

In this case, the State has never contested a sworn affidavit provided by Stephen Greubel, an appellate attorney from the Tulsa Public Defender's office, who tells us that "[a]ll attorneys in our office have access to the OIDS website which provides access to unpublished Oklahoma Court of Criminal Appeals decisions by case name, by date of decision, and by subject matter"; "[t]he decisions in [Robinson and Terry] were available to [Heard's lawyer] on that website at the time she represented Mr. Heard"; "[a]ll attorneys in our office are encouraged to consult with one of the appellate attorneys should they have substantive . . . questions about their cases"; and the "attorneys are aware that appellate counsel receive and maintain a library of unpublished Oklahoma Court of Criminal Appeals decisions." Aplt. App. Vol. I at 67. At a minimum, these statements reinforce our conclusion that a reasonable defense attorney in Oklahoma would have searched OIDS for unpublished authority under the circumstances.

Indeed, the OIDS website is available to the public. We agree with Heard that a competent lawyer should have known that "absent a controlling published opinion, a trial court is likely to take seriously a pertinent unpublished decision of a higher court, even if that decision is not technically binding." Aplt. Supp. Br. at 18-19. That seems especially true in Oklahoma, where the state's high court permits parties to cite unpublished decisions, provided that "no published case would serve as well the purpose for which counsel cites it." Okla. Ct. Crim. App. R. 3.5(C)(3); id. (noting that unpublished opinions

21

"may also be helpful as persuasive authority in trial courts"). Under the circumstances of this case, then, where the OCCA had published no opinions addressing the scope of § 1123(A)(2) as it applied to "look[ing] upon" the "body or private parts" of a minor, and in light of the apparent likelihood, in the absence of judicial narrowing, of the facial unconstitutionality of the "looking upon" portions of this statute on vagueness grounds, the failure to research the OCCA's unpublished opinions and discover <u>Robinson</u> and <u>Terry</u> would have fallen below a constitutionally minimal level of representation.[5]

Nevertheless, our determination that constitutionally sufficient counsel would have become aware of the possible defenses and cases we have discussed does not end our inquiry. We must "strongly presume[]" that counsel's decision not to inform Heard of the possibility of asserting these defenses was made "in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. Once again, we turn to "prevailing professional norms" to determine what was reasonable, and again we turn to publications promulgated by the ABA for guidance. <u>See</u> <u>Padilla</u>, 130 S. Ct. at 1482. In its Standards for Criminal Justice, the ABA commands "defense counsel, after appropriate

---

[5] The record does not reflect whether Heard's lawyer actually discovered <u>Robinson</u> and <u>Terry</u>, or was otherwise aware of the viable defenses discussed above, prior to advising Heard to plead guilty. Heard has always alleged that counsel did not discover these cases, and the State has never contested his claim. However, from a constitutional perspective, counsel's performance would have been constitutionally deficient under either scenario, because the record reflects that Heard's lawyer never told him of these cases, and as we conclude below, minimally competent counsel would have <u>both</u> discovered <u>Robinson</u> and <u>Terry</u> <u>and</u> advised her client of these cases.

22

investigation, [to] advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision." Standards for Criminal Justice 14-3.2(b) (3d ed. 1999). The ABA also prescribes that counsel "inform[] himself or herself fully on the facts and the law, [and then that she] advise the accused with complete candor concerning all aspects of the case." Id. 4-5.1 (3d ed. 1993).

Under the circumstances here, we can easily conclude that counsel's failure to discuss with Heard the possible defenses discussed above rendered her performance constitutionally insufficient. The prospect of asserting a viable defense that Heard's conduct fell outside of § 1123(A)(2)'s ambit, or that the statute itself was unconstitutional, was an "alternative[] available" that Heard (or any reasonable defendant, for that matter) would have "deemed important," see id. 14-3.2(b) (3d ed. 1999). This is especially so because Heard faced (and was ultimately sentenced to) concurrent twenty-five-year prison sentences on each count. For that reason, on this record we reject any notion that counsel's decision to advise Heard to plead guilty without mentioning viable defenses might have been justifiable on any strategic basis.[6]

---

[6] The State does not argue on appeal that Heard's counsel made a strategically valid decision not to discover or discuss Robinson and Terry with her client. However, in its post-conviction briefing before the state trial court, the State did suggest that counsel might have made a strategically defensible decision not to research or disclose those cases to her client because the plea deal offered by the State was favorable to Heard. It was wise of the State not to pursue that argument here on appeal because it is patently indefensible. No matter how good a deal the State may have offered, Heard could not

Continued . . .

23

Instead, we think it clear on the record before us that counsel's failure to advise Heard of the defenses in this case was constitutionally deficient lawyering. See also Aplt. App. Vol. I at 99 (Letter to Heard from Stephen Greubel, appellate attorney in the Tulsa Public Defender's office) ("We ordinarily do not draft [habeas petitions] for our former clients, but in this case I believed it was necessary to do so since it was our lawyer who provided ineffective assistance and then failed to protect your appellate rights.").

In conclusion, "[a]lthough [we] are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment," where, as here "a failure to [disclose a defense] does not reflect sound professional judgment, such deference is not appropriate." Dando v. Yukins, 461 F.3d 791, 799 (6th Cir. 2006); cf. United States v. Juarez, 672 F.3d 381, 387 (5th Cir. 2012) (finding deficient performance where "[n]o Fifth Circuit case law interpreted" the relevant statute, but where, "[b]ased on the legal authority available at the time," the defense that counsel failed to offer was "plausible"). We hold that Heard has shown that his lawyer's performance during the plea-negotiation stage was constitutionally deficient.

---

Cont.

appraise the value of that deal nor make his own decision of its value (which, after all, is the client's decision) without balancing the value of the plea deal in the context of the strength of the State's case against him—and that in turn could not be evaluated by Heard adequately in the absence of his knowledge of and discussion with his lawyer about Robinson and Terry. As a further nail in the coffin of this argument, we note later in this opinion that the deal the State offered—two concurrent twenty-five-year sentences to a forty-eight-year-old man with a life expectation of seventy-nine years, was not that incredible a deal in any event.

24

## 2.    Whether counsel's deficient performance prejudiced Heard

Heard argues that "[t]his Court can have no confidence that Mr. Heard would have acquiesced in a guilty plea and a recommended 25-year sentence had he known that an OCCA decision strongly suggested, as a matter of law, that he hadn't committed the offense he was charged with." Aplt. Supp. Br. at 28.  We agree.

A defendant challenging his guilty plea based on ineffective assistance of counsel must show "prejudice" by establishing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.  Our assessment of this prong will of necessity "depend in large part" on objective factors such as whether an unmade evidentiary or legal discovery "likely would have changed the outcome of a trial," or whether a defense about which the defendant was not advised "likely would have succeeded at trial."  Hill, 474 U.S. at 59. And in making those objective determinations, we should "proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision," Strickland, 466 U.S. at 695 (emphasis added), which must, of course, mean the standards that govern the decision at the time the decision was made.

Ultimately, though, our task is to make a holistic inquiry into all of the "factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).  It is

25

uncontroversial to say that this assessment can include "objective" facts specific to a petitioner such as his age, the length of the sentence he faced under the terms of the plea deal, the prospect of minimizing exposure to other charged counts, and so on. But we pause to provide some clarification on a point that appears to have caused some confusion among the circuits; namely, whether the "prejudice" inquiry contains a "subjective" component—in other words, whether a court can take into account a particular defendant's own statements and actions in determining whether he would have insisted on going to trial. Compare, e.g., Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (noting that a petitioner's statement that he would have gone to trial "carries some probative value," but admonishing that "such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances"), with Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012) ("The [prejudice] test is objective, not subjective."). For our part, we have previously held that a petitioner's "mere allegation that he would have insisted on trial but for his counsel's errors . . . is ultimately insufficient to entitle him to relief." Miller, 262 F.3d at 1072 (internal quotation marks omitted).

The Supreme Court recently stated that proof of prejudice requires a petitioner to show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S.Ct. at 1485 (emphasis added). In our view, that statement suggests an objective floor, somewhere below Hill's more demanding requirement that the defendant show "a reasonable probability that" he would have gone to trial absent

26

counsel's errors. Hill, 474 U.S. at 59 (emphasis added). In other words, we understand the Court's pronouncement in Padilla to mean that in determining whether this counsel's ineffectiveness was prejudicial, we should first ask whether going to trial would have been objectively "rational under the circumstances"; however, after a petitioner has met this objective threshold of rationality in proceeding to trial, we see no reason to blind ourselves to the individual defendant's statements and conduct when ascertaining whether he has satisfied the more demanding "reasonable probability" threshold articulated in Hill.

In sum, we remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors, and if the defendant can muster no other evidence of how he would have responded if he had received effective assistance of counsel, the inquiry will focus on the objective evidence. But "the ultimate issue [remains] whether the defendant would have changed his plea," Miller, 262 F.3d at 1074-75 (emphasis added) (alterations, citation, and internal quotation marks omitted), and if a defendant persuades us that going to trial would have been rational in light of the objective circumstances of his case, we are sure that Hill requires consideration of all of the "factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial." Champion, 262 F.3d at 1072.

With these principles in mind, we now turn to whether Heard has carried his burden on Hill's prejudice prong. Here, we have no trouble concluding that a decision to go to trial in Heard's case would have been rational. And the evidence in the record

27

strongly establishes a reasonable probability that Heard would have withdrawn his guilty plea if he had had timely notice from his lawyer of Robinson and Terry.

Turning first to the viability of the defenses implicit in Robinson and Terry, there are several ways Heard's lawyer credibly could have favorably "changed the outcome" of Heard's case had she made reasonable use of those cases. For example, it is reasonably probable that bringing those cases to the prosecutor's attention during the plea-negotiation stage could have resulted in a better bargain, lesser charges, or even dismissal of the case altogether. Cf. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (holding that where the allegedly deficient performance is failure to communicate a plea offer, prejudice means "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time"). Furthermore, had Heard's lawyer argued those cases to the trial judge, the district judge might have dismissed the case. See Hill, 474 U.S. at 59 (prescribing inquiry into whether an undisclosed defense "likely would have succeeded at trial"). If not, we think the judge likely would have provided favorable jury instructions reflecting that § 1123(A)(2) requires "something more" than lewdly "looking at" the "body or private parts" of a minor. See Robinson, Aplt. App. Vol. I at 69-70; Strickland, 466 U.S. at 695 (instructing that we presume judge would "impartially apply the standards that govern the decision").

Second, under the circumstances of this case, an evaluation of whether "a decision to reject the plea bargain would have been rational under the circumstances," see Padilla,

28

130 S.Ct. at 1485, must take into account the fact that if Heard had gone to trial and been convicted, he could have mounted several potentially meritorious challenges to his conviction on appeal. Heard has identified several such challenges, including that (1) interpreting the lewd molestation to criminalize looking upon clothed minors in a lewd and lascivious manner "renders the statute void for vagueness," because it provides no guidelines to govern law enforcement, see Aplt. Supp. Br. at 28-29 (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983), and suggesting that "[t]he statute could cover a 17-year-old boy checking out a group of girls . . . in a high-school hallway between classes," or a "high-school football fan watching the cheerleaders' halftime show"); (2) as a matter of statutory construction, the legislature must have intended a more limited ambit in the "looked upon" context than would capture Heard's conduct; and (3) it would be "utterly unforeseeable," and thus a violation of due process, to "read § 1123(A)(2) so expansively that it covers looking at clothed minors," Aplt. Supp. Br. at 32 (citing Bouie v. City of Columbia, 378 U.S. 347, 352-53 (1964)).

Furthermore, though we do not intend to detract from the seriousness and unacceptable nature of Heard's conduct, in this case, Heard received what could only be described as a harsh sentence in exchange for his pleas. Indeed, Heard was forty-eight years old when he was convicted and sentenced to concurrent twenty-five-year sentences in 2006. Oklahoma law mandates that defendants convicted under the state's lewd molestation statute serve eighty-five percent of their sentences before becoming eligible for consideration for parole, see Okla. Stat. tit. 21, § 13.1(18), which means Heard would be

29

up for consideration after serving just over 21 years of his sentence. According to actuarial data compiled by the Social Security Administration, the average forty-eight-year-old man alive in 2009 could expect to live only thirty-one more years. Actuarial Life Table: Period Life Table, 2009, Social Security, http://www.ssa.gov/OACT/STATS/table4c6.html. Given the uncertainties associated with the possibility of parole and life in prison, Heard's current prison term could very well become a life sentence.

Finally, Heard's prompt and clear response after he discovered Robinson points unambiguously and compellingly to the conclusion that Heard, in fact, would have withdrawn his guilty plea if his attorney had timely advised him of Robinson and Terry. The State does not challenge the historic fact that as soon as Heard learned of the Robinson case mere weeks after entering his guilty plea, he sought to undo his plea by authorizing attorney Kevin Adams to begin pursuing his post-conviction proceedings and by writing the Tulsa Public Defender's office looking for help. The State also does not dispute that Heard has tirelessly pursued that end ever since.

The State counters that the factual circumstances surrounding Heard's pleas suggest that he would not have taken his chances on a trial. But in support of this proposition, the State argues only that (1) its evidence against Heard included a handwritten confession and video surveillance, (2) "the jury would have heard about at least one of [Heard]'s prior convictions . . . [,] in which he was convicted of lewd molestation, performing a sex act in the presence of a minor, and indecent proposal to a child," Aple. Br. at 26, and (3) he faced up to life imprisonment. According to the State,

30

the likelihood of an unsympathetic jury and the weight of the evidence, when combined with the very real possibility of life without parole, undermine Heard's claim that he would have pursued his case to trial.

We are cognizant of the psychological weight of the possibility of receiving a formal life sentence, as well as the attractiveness of a plea deal that keeps alive hope for eventual freedom, no matter how brief. However, in light of all of the possibilities for a more favorable outcome we have discussed, as well as record evidence of Heard's particular circumstances and his actual actions in this case, we hold that as a matter of law, Heard has carried his burden to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59. On this record, therefore, Heard has satisfied his obligation to show that he was prejudiced by his counsel's ineffective performance.[7]

### 3. Conclusion on whether Heard is entitled to relief on ground of ineffective assistance of pre-plea counsel

Heard has met his burden to show that he was deprived of his Sixth Amendment right to counsel when his lawyer advised him to plead guilty without advising him of the viable defenses we have discussed. Accordingly, his pleas of guilty were not "voluntary and intelligent," Hill, 474 U.S. at 56, and so Heard is entitled to relief on this ground.

---

[7] We acknowledge that often Hill's prejudice inquiry will require a factual hearing, but we stress again the strength of this record before us, and we conclude that in this case, a remand for such a factual hearing is not necessary as a matter of law.

31

### C. Whether counsel was ineffective for failing to consult with Heard about the possibility of an appeal[8]

Because we have concluded that Heard is entitled to relief on his claim that counsel provided constitutionally inadequate representation when she advised him to plead guilty without disclosing the viable defenses available in his case, we need not spend much time on his second, related claim of ineffective assistance of appellate counsel. Suffice it to say that for mainly the same reasons we have already discussed, we believe Heard is entitled to relief on his second ground as well.

---

[8] The State argues that Heard abandoned this second ineffective-assistance claim when he failed to raise it in his pro se opening brief. We liberally construe pro se filings, which means we give pro se petitioners the benefit of the doubt when they "confus[e] various legal theories" within the labyrinth of § 2254, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), so long as they "allege the necessary underlying facts to support a claim under a particular legal theory," Hammons v. Saffle, 348 F.3d 1250, 1258 (10th Cir. 2003).

The OCCA "allows defendants to appeal from conviction on a guilty plea only if they have applied to withdraw their plea within ten days of the date of the pronouncement of the judgment and sentence." Young v. Addison, 248 F. App'x 14, 15 (10th Cir. 2007) (citing Okla. Ct. Crim.App. R. 4.2(A)). In his § 2254 petition, Heard states that he "did not learn of his counsel's erroneous advice regarding this statute until long after his 10-day limit within which he could withdraw said plea," which was "cause and prejudice as well as ineffective assistance of counsel." Aplt. App. Vol. I at 12 (emphasis added). Then, in his pro se opening brief, Heard alleged that he "was deprived of his Sixth Amendment right to the effective assistance of counsel because counsel wholly failed to properly research or understand the law . . . and failed to advise him of the grounds by which he could have withdrawn his plea in a timely manner." Aplt. Br. at ii. We "can reasonably read [Heard's § 2254 petition and opening brief] to state" both of the claims for ineffective assistance of counsel that he has advanced throughout the course of this litigation, see Bellmon, 935 F.2d at 1110, and so we reject the State's abandonment argument.

In particular, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000). "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

As our discussion of Heard's first claim for ineffective assistance of counsel demonstrates, there were obvious, nonfrivolous grounds for appeal in this case, such that a rational defendant would have wanted to appeal. We are thus satisfied that there exists a "reasonable probability that, but for counsel's deficient failure to consult with [Heard] about an appeal, he would have timely appealed," Flores-Ortega, 528 U.S. at 484.

Nevertheless, while Heard is entitled to relief on this ground, since the relief we have already afforded Heard should allow him to vacate his guilty plea, that effectively moots any state-court appeal challenging that guilty plea.

## CONCLUSION

In conclusion, we REVERSE the district court's denial of Heard's § 2254 petition, and we REMAND to the district court to fashion a remedy that will allow Heard to withdraw his guilty pleas. More specifically, we instruct the district court to grant

33

Heard's petition and order his release unless, within a reasonable amount of time, the

Oklahoma state court allows Heard to withdraw his pleas.