FILED
United States Court of Appeals
Tenth Circuit

August 5, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALEJANDRO OVIEDO-TAGLE,

    Defendant - Appellant.

No. 15-3206
(D.C. Nos. 5:14-CV-04099-JAR and
5:11-CR-40055-JAR-1)
(D. Kan.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **MORITZ**, Circuit Judges.
_____

Defendant Alejandro Oviedo-Tagle pleaded guilty to a federal drug charge and

was sentenced to 25 years' imprisonment. He moved for relief under 28 U.S.C. § 2255,

claiming that he had pleaded guilty only because his counsel had falsely promised him a

sentence between five and seven years' imprisonment. After an evidentiary hearing the

district court denied the motion. He now seeks a certificate of appealability (COA) to

appeal the denial of his motion. *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously
that oral argument would not materially assist in the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted
without oral argument. This order is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

denial of relief under § 2255). Because no jurist could dispute that the district court reasonably concluded that Defendant failed to show prejudice, we deny a COA and dismiss the appeal.

## I. BACKGROUND

Defendant was indicted in the United States District Court for the District of Kansas on five counts: being an illegal alien in possession of a firearm, *see* 18 U.S.C. §§ 922(g)(5) and 924(a)(2); illegal reentry, *see* 8 U.S.C. § 1326(a); production of false identification documents (two counts), *see* 18 U.S.C. § 1028(a)(1) and (b)(3); and conspiracy to distribute methamphetamine, *see* 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). The prosecution provided defense counsel extensive discovery, including police reports, videos, wiretap recordings (including recordings of Defendant), and reports of debriefings of cooperating persons.

On January 17, 2012, after several trial continuances, the prosecution sent Defendant's attorney a proposed plea deal that required him to plead guilty to the conspiracy charge, which carried a minimum term of ten years and a maximum term of life. Under the agreement the parties would request that Defendant be sentenced under the United States Sentencing Guidelines, Defendant would provide information relating to the crimes charged in his indictment, and Defendant would waive his right to appeal a within-guidelines sentence. The government (subject to conditions such as Defendant's continued cooperation and lawful behavior) would seek a three-level reduction in Defendant's offense level; would not oppose Defendant's request for a sentence at the

low end of the guidelines range; "[i]f appropriate," would move for a further reduced sentence for substantial governmental assistance under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e); and would forgo pursuing any other charges.

On May 25, 2012, the district court held a plea hearing. After Defendant was sworn in, the prosecutor restated the key terms of the plea agreement, and Defendant said that he understood and agreed. The court then explained at length the sentencing process. Regarding Defendant's potential term the court stated:

> So sentencing is a complicated process. What that means is I cannot predict to you with certainty what sentence you'll receive. [Defense counsel] and [the prosecutor] cannot predict with certainty what sentence you'll receive.
>
> . . . .
>
> . . . Mr. Oviedo, I can tell you with certainty that I will be imposing a sentence of not more than life in prison and not less than 10 years in prison. There are some exceptions, though, to the mandatory minimum of 10 years in prison.
>
> . . .
>
> [One] exception is the substantial assistance exception. And the way it works is if you were to cooperate with the government and the government thought your cooperation gave them substantial assistance . . . . I would then, under those circumstances, have the authority to sentence you to something less than 10 years, if I thought that was appropriate.

Plea Hr'g Tr., R., Vol. 1 at 72–75. Defendant said that he understood the court's explanation, and he signed the plea agreement.

The probation office's presentence report (PSR) calculated a total offense level of 41, including a three-level reduction for acceptance of responsibility, and a guideline sentencing range of 324–405 months. At the sentencing hearing on April 1, 2013,

3

defense counsel requested a sentence between three and five years based on Defendant's assistance to the government. The prosecution responded that Defendant had given conflicting and unreliable information, but it nonetheless recommended a 24-month sentence reduction for substantial assistance. The court sentenced Defendant to 300 months, which was 24 months less than the bottom of the guideline range.

On October 17, 2014, Defendant moved for relief under 28 U.S.C. § 2255 on the ground that his counsel had falsely informed him that if he pleaded guilty he would receive a sentence of five to seven years in prison. The court held an evidentiary hearing to determine whether defense counsel had been ineffective and whether Defendant entered his plea knowingly and voluntarily. Defendant and his counsel presented conflicting testimony concerning the facts surrounding his plea. Defendant's testimony—which the court found "at times confused and contradictory," Memorandum and Order (Order), R., Vol. 1 at 152—was that his counsel never discussed the sentencing guidelines with him but told him that if he pleaded guilty he would be sentenced to five to seven years, compared to a 17-year sentence if he went to trial. His attorney denied predicting Defendant's sentence. He testified that he would have discussed with Defendant his potential minimum and maximum sentences, as well as the potential reduction for substantial assistance, and that he explained to Defendant that the guidelines range was uncertain until the government prepared the PSR. He admitted, however, that he did not inform Defendant of his potential guidelines sentencing range although he was aware of facts suggesting a range of 210–262 months.

4

The district court denied Defendant's motion for relief. It applied *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires Defendant to make two showings: "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." The deficiency prong requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. On that issue the court did not determine whether to credit Defendant's testimony or that of counsel, but found that there was "a colorable claim that [counsel's] representation fell below an objective standard of reasonableness." Order, R., Vol. 1 at 164.

The court then ruled that even if counsel's performance had been unreasonable, Defendant failed to show prejudice. To show the requisite prejudice in the guilty-plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Heard v. Addison*, 728 F.3d 1170, 1176 (10th Cir. 2013). The test is ultimately a subjective one: "whether *the defendant* would have changed his plea." *See Heard*, 728 F.3d at 1184 (brackets and internal quotation marks omitted). But we do not merely take a defendant at his word. *See id.* If he, as here, presents only "bald, post hoc and unsupported statements that [he] would have changed his plea absent counsel's errors, . . . the inquiry will focus on the objective evidence." *Id.* Then, to show prejudice, he must demonstrate that "going to trial would have been objectively rational under the circumstances." *Id.* (internal quotation marks omitted).

5

The district court expressed "trouble concluding that a decision to go to trial in [Defendant's] case would have been rational." Order, R., Vol. 1 at 166–67 (internal quotation marks omitted). It first found that Defendant failed to show how he might have succeeded at trial. The government could have offered testimony from numerous cooperating witnesses that they purchased methamphetamine from Defendant, and Defendant did not allege that his counsel could have done more regarding the merits of the case. The court then noted that the plea agreement offered several benefits, such as dismissal of all but the conspiracy count, a government motion for a three-point reduction in offense level for acceptance of responsibility, and a recommendation for a reduced sentence if Defendant provided substantial assistance. The court found that had Defendant weighed the plea deal's benefits against the negligible chance of acquittal at trial, he could not rationally have insisted upon going to trial.

The court further noted that Defendant had not shown that his counsel's actions caused him to plead guilty. It reasoned that even if counsel failed to properly explain to Defendant the potential sentence, the court fully informed Defendant at the plea hearing, breaking any causal chain that may have been created by the alleged misinformation from counsel.

## II. ANALYSIS

"When reviewing a district court's denial of a § 2255 petition, we review questions of law de novo and questions of fact for clear error." *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004). Defendant challenges the district court's analysis

6

of prejudice, arguing that even if the chance of acquittal was slight, it could be rational to go to trial because the benefits of the bargain were illusory. He insists that an informed person could reasonably have rejected the plea deal because it "forced [him] to give up nearly everything in exchange for almost nothing." Aplt. Br. at 20–21. We are not persuaded.

We first address what Defendant gave up. The district court found that Defendant made no showing of possible trial success. Defendant does not contest that point, but argues that even if he had only "a one-in-a-million chance at an acquittal" he would have rejected the plea deal because "it offers nothing in return for surrendering that chance." Aplt. Br. at 26. He points to other concessions he made in the plea deal: he agreed not to request a sentence below the bottom of the guideline range, waived his right to appeal a within-guidelines sentence, and waived collateral attacks other than for ineffective assistance. But Defendant did not argue to the district court that these concessions made the plea deal less attractive, so we need not consider them. And in any event, their importance pales in comparison to the sentence he likely faced.

As for Defendant's claim that the benefits of the plea deal were illusory, we beg to differ. They were substantial: dismissal of all charges except the distribution charge, a three-point offense-level reduction for acceptance of responsibility, and the government's willingness to move for a downward departure based on Defendant's substantial assistance. Defendant argues that even if he ultimately received those benefits, receipt was uncertain at the time he accepted the plea deal. He argues that the district court

7

should have evaluated Defendant's decision based on what Defendant knew when he decided to plead guilty, but erred by instead considering the benefits that Defendant eventually received. We agree that whether going to trial would have been objectively rational under the circumstances depends on what Defendant knew at the time he pleaded guilty. But we read the district court's order as having analyzed the bargain as it appeared at the time of the plea. True, none of the benefits of the plea deal were guaranteed. The court still had the power to sentence Defendant to the statutory maximum (life); it could reject the recommendation for an acceptance-of-responsibility reduction; and the government gave only a qualified, conditional promise to recommend a reduction for substantial cooperation. But benefits that are not guaranteed are not worthless. The plea deal offered Defendant a substantial probability of a reduced sentence. Given this probable (if not absolutely certain) benefit, and the absence of any chance of success at trial, the court found no reasonable probability that a rational defendant would have rejected the plea deal and insisted on trial. This analysis was legally proper and its conclusion sound.

The district court also found that Defendant failed to show that his attorney's alleged error regarding his potential sentence caused him to plead guilty. The court noted that it fully informed Defendant of his potential sentence at the plea hearing and that Defendant stated under oath that he understood. Defendant counters that the district court "applied the wrong legal standard by using its colloquy as a per se rule that automatically transformed an unknowing plea into a knowing one." Aplt. Br. at 29. He relies on *Tovar*

8

*Mendoza v. Hatch*, 620 F.3d 1261 (10th Cir. 2010), where the defendant contended that he had been induced to plead guilty by a false promise from counsel that he would receive only a three-year sentence. *Id.* at 1271–72. After an evidentiary hearing the magistrate judge found that the attorney had "recklessly promised" a three-year sentence, *id.* at 1266–67, that the defendant would likely have been acquitted at trial, *see id.* at 1267 n.2, and that but for his attorney's errors there was a reasonable probability that he would have insisted upon going to trial, *see id.* at 1267. Although the district court adopted these findings, *see id.*, it denied relief because the defendant had stated under oath at his plea hearing that he understood his potential sentence. It rejected the § 2254 application on the ground that it was "built entirely on [the defendant's] admitted perjury" when pleading guilty. *Id.* (internal quotation marks omitted). In reversing, we said, "nothing in Supreme Court precedent suggests that a due process violation resulting from the entry of an unknowing plea can be overlooked due solely to the defendant having made false in-court statements during the plea hearing." *Id.* at 1271.

This case is not *Tovar Mendoza*. The district court did not treat Defendant's statements at his plea hearing as a per se bar to habeas relief. In fact, the court did not make a finding regarding Defendant's veracity because that was irrelevant to its ruling. It rejected Defendant's § 2255 motion based on an objective test—whether a reasonable person would have rejected the plea agreement.

9

In light of Defendant's presentation on appeal, no reasonable jurist could debate that the denial of his § 2255 motion was mistaken. We DENY a COA and DISMISS the appeal.

Entered for the Court


Harris L Hartz
Circuit Judge