**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

NICHOLAS SOUDERS,

    Petitioner - Appellant,

v.

SCOTT DAUFFENBACH, Warden; PHIL
WEISER, Attorney General of the State of
Colorado,*

    Respondents - Appellees.

No. 18-1419
(D.C. No. 1:17-CV-02883-RM)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**\**
_____

Before **PHILLIPS**, **McKAY**, and **BALDOCK**, Circuit Judges.
_____

Nicholas Souders seeks a certificate of appealability (COA) to appeal the

district court's denial of his petition for a writ of habeas corpus under 28 U.S.C.

§ 2254.[1] After review, we deny Souders a COA and dismiss his appeal.

---

   \* Pursuant to Fed. R. App. P. 43(c)(2), Cynthia Coffman is replaced by Phil
Weiser as a Respondent in this case.

   \** This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

   [1] Because Souders is pro se, we construe his filings liberally, but we stop short
of acting as his advocate. _Hall v. Bellmon_, 935 F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND

In 2003, the state of Colorado charged Souders with four counts: (**1**) sexual assault (application of physical force or physical violence), in violation of Colo. Rev. Stat. § 18-3-402(1)(a), (4)(a) (2006); (**2**) sexual assault (while physically aided or abetted by another, in violation of § 18-3-402(1)(a), (5)(a)(ii)); (**3**) conspiracy to commit sexual assault, in violation of §§ 18-3-402(1)(a), (4) and 18-2-201; and (**4**) possession of marijuana with intent to distribute, in violation of § 18-18-06(8)(b)(1).[2] *People v. Souders*, No. 05CA1581, slip op. at 1 (Colo. App. July 26, 2007).

After a trial on the sexual-offense counts, the jury convicted Souders of the second count listed above, but it acquitted him on the other two counts. For his conviction, the court sentenced him to a mandatory range of sixteen years to life imprisonment under the Colorado Sex Offender Lifetime Supervision Act. On direct review, the Colorado Court of Appeals (CCA) affirmed Souders's conviction and sentence. *People v. Souders*, No. 05CA1581 (Colo. App. July 26, 2007). The Colorado Supreme Court denied his writ of certiorari. About six years later, Souders sought post-conviction relief in the Colorado state courts, asserting ineffective assistance of trial counsel. Among his many claims, he alleged that his trial counsel had not timely informed him of the state's plea offer or of the likely sentencing consequences of rejecting the offer if later convicted.

---

[2] Before trial, the court granted Souders's motion to sever the marijuana-possession count. State court file at 5, 62–64, 87–88. Souders later pleaded guilty to that charge. *Id.* at 176–78.

2

The Colorado state district court held an evidentiary hearing on Souders's post-conviction claim. The court heard testimony from Souders, his mother, his trial counsel, the prosecutor, and Souders's expert in criminal defense and sexual-assault sentencing.

The prosecuting attorney testified that she had offered to dismiss the sexual-assault charges against Souders if he pleaded guilty to a class 5 sex-offense felony—because she had "definite proof challenges with this case. . . ." Dec. 6, 2013 hearing transcript at 7–8. This would have avoided an indeterminate sentence. She "remember[ed] [counsel] . . . telling [her] that he [had] extended the offer to his client, and that his client had rejected the offer." *Id.* at 8.

Souders testified (also at the post-conviction hearing) that he first heard about a plea offer soon before he testified at his sexual-assault trial. He said that he learned this after mentioning to his trial counsel that he wished the state had offered a plea deal. Souders further testified that his trial counsel then responded that the state had in fact made a plea offer, but that it "wasn't good enough."[3] Nov. 22, 2013 transcript at 24–25. Souders testified that his trial counsel had given him no details of the plea offer. *Id.* at 24. Souders's testimony did not reveal whether, after hearing this news,

---

[3] Months before Souders's sexual-assault charges, the same trial counsel had represented Souders on a petty-theft charge, to which Souders pleaded guilty. For the sexual-assault case, Souders's parents retained Mr. Nelson, dipping into their retirement savings to furnish a flat fee of $30,000.

he asked his trial counsel for details about the plea offer, or whether the offer might still be available. *Id.*

In addition, Souders testified that his counsel had never explained to him the difference between determinate and indeterminate sentencing. *Id.* at 26. He did acknowledge that his counsel had told him that if convicted, he "would not be able to see [his five-year-old] son graduate high school." *Id.* at 21.

Souders equivocated about what he would have done had his counsel in fact communicated the offer and told him of the indeterminate-sentencing consequences if convicted of his present charges. First, he testified that had he known those things he "definitely would have looked at it differently." *Id.* at 26. When asked "[h]ow so?" he responded, "I probably would have took a plea – plea deal had I known there was one."[4] *Id.* at 27. Moments later, Souders testified that he would have "considered" a plea bargain lowering his sentencing range.[5] *Id.*

---

[4] Notably, this testimony is vague about whether Souders was speaking about the plea deal actually offered. For instance, Souders never testified that he would have been willing to take a "psycho-sex" examination. His trial attorney remembered that the prosecutor had required this as a condition of the plea deal—the test results then affecting the recommended sentencing range. Dec. 6, 2013 hearing transcript at 29, 34.

[5] Beginning by recognizing that "hindsight is 20/20," Souders's post-conviction counsel asked Souders whether he would have considered a plea offer if he had been told he faced a "minimum sentence to potentially the rest of [his] life in prison if convicted in this case. . . ." *Id.* Souders responded, "Yes." His counsel then asked, "It's something you would have considered?" Souders again answered, "Yes." *Id.*

Souders's mother testified that she attended the initial meeting between her son and his trial counsel, and that her son's trial counsel did not explain the consequences of an indeterminate sentence at the meeting. She also said that Souders had never mentioned to her a proposed plea offer or the prospect of indeterminate sentencing, which she felt he would have done had he known about them.

Souders's trial counsel testified that he had told Souders about the state's offer during a telephone call from his car immediately after meeting with the prosecutor. Dec. 6, 2013 hearing transcript at 35. He said he told Souders that the determinate-sentence offer "was really a good offer." *Id.* at 25. Souders maintained his innocence. *Id.* at 26. Trial counsel testified that he believed Souders had rejected the plea offer because Souders felt that something must be going wrong with the prosecutor's case. *Id.* Though trial counsel "c[ouldn't] remember if [he] discussed [the plea offer] after that or not," he stated that he had spoken with Souders "numerous times" about the strengths and weaknesses of his case and about the potential consequences if he went to trial and lost, including the possibility of spending the rest of his life in prison. *Id.* at 21–23, 35. But trial counsel agreed that his case file contained no notations memorializing that he had communicated the plea offer to Souders or discussed the consequences of an indeterminate sentence with him. *Id.* at 30, 34–35, 39–40. He described himself as "[p]retty rotten at keeping notes." *Id.* at 35.

Finally, Souders called an expert in criminal-defense representation and sex-offense sentencing. The expert testified that accepting the state's offer would likely have resulted in a two-to-six-year prison sentence, followed by two years of parole,

during which time Souders would have had to register as a sex offender. *Id.* at 22. In contrast, he explained that under an indeterminate sentence, a defendant is given a much longer minimum sentence and "can be held in the Department of Corrections for the rest of [his] life until the Department of Corrections and the parole department decides that [he's] not a risk, and [he] can be released." *Id.* at 17. And "up until recently [that] has meant that [the defendant is] not going to be paroled." *Id.* On top of that, "the parole is a lifetime parole, meaning [that the defendant] will be on parole for the rest of [his] natural life." *Id.* at 18–19.

Souders's expert also testified that failing to tell a client about the consequences of rejecting the state's plea offer would fall below the standard of care for adequate representation. *Id.* at 13–14. "You have to have your client come in and sit down with you so you can go over both the evidence and the law and the consequences face to face," because "[t]his is not a decision you would have your client make over the telephone." *Id.* at 24–25. As for trial counsel's failure to memorialize the offer or any of his discussions with Souders, the expert testified that such a failure "definitely f[ell] below the standard of care." *Id.* at 28. He explained that "documenting [plea offers] on your file is very important" because it allows you to "remember what [the offer] is" and because "if someone else has to look at your file, they can figure out what the plea agreement is." *Id.* at 16.

At the end of the hearing, the state district court ruled that Souders had failed to establish ineffective assistance of trial counsel. Specifically, it concluded that "even if the Court were to assume that defense counsel's performance was deficient,

6

[Souders] would fail on the second prong," because he "failed to prove by a preponderance of the evidence that but for defense counsel's errors, he would have accepted the plea." State court file at 466–68. Then presumably switching to the deficient-performance prong, the district court stated that "[d]ue to the specificity of and lack of refutation of the defense counsel's testimony, and the direct refutation of the Defendant's testimony, this Court finds the defense counsel's testimony more credible and in line with actual events."[6] *Id.* at 467. Even so, for reasons not given, the district court did not rest its holding on the deficient-performance prong. *See id.*

The CCA affirmed this decision. *People v. Souders*, No. 14CA0208 (Colo. App. Aug. 31, 2017). The CCA noted that "even if we assume, without deciding, that trial counsel's performance during the plea negotiation process was deficient, we nonetheless conclude that defendant did not show that counsel's substandard performance had prejudiced him." *Id.* at 9. The CCA noted that "[t]o establish prejudice in this context, defendant must show that there was a reasonable probability that, but for counsel's errors, he would have accepted the plea offer rather than proceed to trial. *Id.* at 9–10. The CCA acknowledged that "sentencing disparities can serve as corroborating evidence" that a defendant would have accepted a plea deal, *id.* at 11, but it ultimately ruled that Souders had failed to show prejudice. As

---

[6] The Colorado Court of Appeals began its analysis by saying that "we agree with the defendant that some of the trial court's findings were not supported by the record and that we therefore are not required to defer to them." Slip. Op. at 9. Whether this cryptic reference included the district court's credibility finding is unimportant though, because, as seen above, both courts relied on *Strickland*'s prejudice prong, bypassing the deficient-performance prong.

support, the CCA referenced Souders's "indecisive and conditional" responses about whether he would have accepted the plea agreement and also referenced his testimony that "he did not raise the possibility of a plea deal with trial counsel because he 'was trying to prove [his] innocence.'" *Id.* at 10.

Souders petitioned for federal habeas relief, reasserting his claim for ineffective assistance of trial counsel based on counsel's allegedly failing to communicate a plea offer, and allegedly not explaining the effect of an indeterminate sentence under the Colorado Sex Offender Lifetime Supervision Act. In addition, Souders raised a claim for ineffective assistance of post-conviction counsel, based on counsel's allegedly taking five years to complete the post-conviction motion, and for failing to fully articulate the bases of Souders's claim for ineffective assistance of trial counsel. *Souders v. Dauffenbach*, No. 17-cv-02883-RM (D.Colo., filed Dec. 1, 2017).

The district court first dismissed the claim for ineffective assistance of post-conviction counsel, under 28 U.S.C. §2254(i). *Souders v. Dauffenbach*, No. 17-cv-02883-RM (D.Colo., filed May 11, 2018). Four months later, it dismissed Souders's claim for ineffective assistance of trial counsel, reasoning that Souders had not shown the CCA's decision "was so lacking in justification that there was an error well-understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Souders v. Dauffenbach*, No. 1:17-cv-02883-RM (D.Colo., filed Sept. 24, 2018). In the same order, the district court concluded that it

8

had "no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. §2253(c)." *Id.* at 18.

Souders now seeks a COA to review this federal district court's decision. He raises these same two issues. First, he contends that the federal district court abused its discretion in dismissing his claim for ineffective assistance of post-conviction counsel. Second, he contends that the federal district court abused its discretion by "considering the CCA's findings as being reasonable, when the [CCA] could not provide a single shred of objective corroborating evidence mandated to support such finding." *Souders v. Dauffenbach*, No. 1:17-cv-02883-RM, at 5, 11 (D.Colo., filed Jan. 8, 2019).[7]

## STANDARD OF REVIEW

We have authority to grant a COA upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Howell v. Trammell*, 728 F.3d 1202, 1224–25 (10th Cir. 2013) (quoting *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006)). This means that we consider whether reasonable jurists could debate the

---

[7] We do not read Souders's application for a COA from our court as making any claim under 28 U.S.C. § 2254(d)(2), or (e). In any event, Souders has failed to provide a sufficient argument supporting any claim that the state-court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," or clear and convincing evidence rebutting the presumption of correctness, as required by those subsections.

correctness of the federal district court's order denying habeas relief. In doing so, we also apply to the CCA's decision the same double-deference standard required by the tandem of *Strickland* and 18 U.S.C. § 2254(d).[8] In other words, we follow the Supreme Court's direction to "look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

In deciding whether a petitioner is entitled to a COA, we overview the habeas claims and generally assess their merits. *Id.* at 336. We lack jurisdiction to adjudicate the actual merits. *Id.* at 336–37. Our job at this stage is not to decide whether a claim will ultimately succeed, or even whether some jurists would grant the petition. *Id.* at 337–38. After all, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

Here, the federal district court ruled that the CCA had not violated clearly established law by denying Souders's ineffective-assistance claims on the merits.

---

[8] The first level of deference arises "because the *Strickland* standard is a general standard, [so] a state court has even more latitude to reasonably determine that a defendant has not satisfied the standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The second level arises from review under the Antiterrorist and Effective Death Penalty Act (AEDPA), which conditions a writ on there being "no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents; that is, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)).

*Souders v. Dauffenbach*, No. 1:17-cv-02883-RM, at  (D.Colo., filed Sept. 24, 2018). *See* 28 U.S.C. §2254(d)(1). In particular, the district court found reasonable the CCA's determination that Souders had failed to show prejudice under *Strickland*— that he would have taken the plea offer. Reviewing under AEDPA deference, the district court concluded that the CCA's decision was neither contrary to clearly established law (a Supreme Court holding) nor an unreasonable application of clearly established law to his case. *Souders v. Dauffenbach*, No. 1:17-cv-02883-RM, at 15–18 (D.Colo., filed Sept. 24, 2018). As mentioned, the federal district court had already dismissed Souders's claim in which Souders had asserted ineffective assistance of post-conviction counsel.

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2553(c) is straightforward. The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The district court properly limited its review "to the record that was before the state court that adjudicated the claim on the merits," and required "an examination of the state-court decision at the time it was made." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

## DISCUSSION

For issues the CCA decided on the merits, Souders must show that the CCA's decision is contrary to, or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). In analyzing this, we begin by reviewing the Supreme Court

11

cases he relies upon to support his claims. These cases concern *Strickland* claims of ineffective assistance of counsel in the plea context.

### A. Souders's Cited Supreme Court Cases Involving *Strickland* Claims in the Plea Context

Under the *Strickland* framework, a petitioner must show (1) that "counsel made errors so obvious that counsel was not functioning as 'counsel'" and (2) that "the deficient performance prejudiced the defense." *Johnson v. Carpenter*, 918 F.3d 895, 900 (10th Cir. 2019). In his petition, Souders cites the following cases in which the Supreme Court has applied the *Strickland* framework in the plea context.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), Mr. Hill pleaded guilty to first-degree-murder and theft charges, agreeing to terms of 35 and 10 years of imprisonment. *Id.* at 53. Before pleading, Mr. Hill obtained advice from counsel that he could become parole eligible after completing one-third of his prison term. *Id.* at 54–55. This advice proved wrong. Instead, as a second offender, Mr. Hill was not parole eligible until he completed one-half of his prison term. *Id.* at 55. So just a year after *Strickland*, the Court was called upon to decide whether the same ineffective-assistance-of-counsel rule applied in this plea setting. *Id.* at 57. After reviewing why prejudice mattered in this context too, the Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. To meet the required showing of prejudice, Mr. Hill had to "show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. The Court ruled that Mr. Hill

12

had failed to meet the *Strickland*-prejudice showing, noting that he "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." *Id.* at 60.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), Mr. Padilla pleaded guilty to transporting a large amount of marijuana in his trailer. *Id.* at 359. He was a native of Honduras but also was a lawful permanent resident of the United States, even having served in Vietnam. *Id.* His counsel advised him that a conviction would not result in deportation, when, in fact, it virtually ensured it. *Id.* The Court agreed with Mr. Padilla that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation." *Id.* at 360. In finding Mr. Padilla's counsel ineffective, the Court relied on prevailing professional norms, the importance of a client's right to stay in the United States, and the immigration statute's being "succinct, clear, and explicit in defining the removal consequences for Padilla's conviction." *Id.* at 366–68. The Court rejected the Kentucky Supreme Court's view that the ineffectiveness claim could not reach collateral matters, those not within the sentencing court's authority." *Id.* at 364. After ruling that "*Strickland* applies to Padilla's claim," the Court remanded for a determination of whether Mr. Padilla could show prejudice. *Id.* at 374. In summary, the Court noted that "we have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective

assistance of counsel." *Id.* at 373 (citing *Hall*, 474 U.S. 57; *McMann v. Richardson*, 397 U.S. 759, 770–71 (1970)).

In *Missouri v. Frye*, 566 U.S. 134 (2012), Mr. Frye was charged with a felony for driving with a revoked license after three previous convictions for that offense. *Id.* at 138. The prosecutor sent Mr. Frye's counsel two alternate plea offers, the first agreeing to recommend a 3-year sentence for a guilty plea to the felony, with a 10-day sentence and no recommendation on probation; and the second agreeing to a misdemeanor plea if Mr. Frye agreed to a 90-day sentence. *Id.* The offers were to expire on December 28, but counsel failed to convey the offers. *Id.* After a later driving-while-revoked arrest, Mr. Frye pleaded guilty to the original felony charge, and the prosecutor recommended the sentence offered in the first plea offer. *Id.* But the court sentenced him to three years' imprisonment. *Id.*

At his state postconviction hearing, Mr. Frye "testified he would have entered a guilty plea to the misdemeanor had he known about the offer." *Id.* The Missouri Court of Appeals ruled in Mr. Frye's favor, concluding that he had "met both of the requirements for showing a Sixth Amendment violation under *Strickland*." *Id.* After granting certiorari, the Supreme Court looked to *Hill* and *Padilla* "in considering the role of counsel in advising a client about a plea offer and an ensuing guilty plea." *Id.* It observed that "*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Id.* at 140 (citing *Hill*, 474 U.S. at 57). The Court noted that Mr. Hill's ineffectiveness claim had failed for lack of prejudice—referencing Mr. Hill's failure even to allege

that if properly advised he would have opted for trial instead of pleading guilty. *Id.* at 141.

After reviewing those two cases, the Court noted their differences with Mr. Frye's—*Hill* and *Padilla* involved defendants pleading guilty on incorrect advice, while *Frye* involved a defendant who had pleaded guilty on accurate advice from counsel. So Mr. Frye's argument differed because it involved "the course of legal representation that preceded it with respect to other potential pleas and plea offers." *Id.* at 141–42. In this different circumstance, the Court commented that "[t]he inquiry then becomes how to define the duty and responsibilities of defense counsel in the plea bargain process." *Id.* at 144. The Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* The Court declined to address possible exceptions, noting that "the offer was a formal one with a fixed expiration date." *Id.* at 145. By not conveying the offer, Frye's counsel had rendered deficient performance. *Id.*

Turning to whether prejudice results from plea offers having "lapsed or been rejected because of counsel's deficient performance," the Court required a showing of "a reasonable probability they would have accepted the earlier plea had they been afforded effective assistance of counsel." *Id.* at 147. The Court also required a defendant to show a reasonable probability that the prosecution would not have canceled its offer before the defendant entered the guilty plea, and also that the sentencing court would have accepted it. *Id.* The Court thought that Mr. Frye might

15

have shown a reasonable probability he would have accepted the first plea offer if his counsel had told him of it—because he later pleaded to a more serious charge. *Id.* at 150. But the Court still remanded on the prejudice question, needing to know whether Missouri law would require the prosecutor and court to have proceeded with the plea deal even after Mr. Frye was again arrested on the same charge. *Id.* at 151.

In *Lafler v. Cooper*, 566 (2012), decided the same day as *Frye*, Mr. Cooper had fired a gun repeatedly at a fleeing woman, striking her in the buttock, hip, and abdomen. *Id.* at 161. The state charged him with assault with intent to commit murder, felon in possession of a firearm, possession of a firearm in connection with a felony, and misdemeanor marijuana possession. *Id.* The prosecuting attorney twice offered a plea deal by which the state would recommend a sentence of 51 to 85 months on the other two counts. *Id.* Mr. Cooper communicated to the court his admission of guilt and desire to accept the plea offer. *Id.* But he later rejected the offers on the advice of counsel—who persuaded him that a jury was unlikely to convict on the charge of assault with intent to commit murder, because the victim was shot below the waist. *Id.* During trial, the prosecuting attorney offered a significantly-less-favorable plea deal, which Mr. Cooper rejected. *Id.* At trial, he was convicted on all counts and was sentenced to imprisonment for 185 to 360 months. *Id.*

The federal district court granted Mr. Cooper a conditional writ calling for specific performance of the original plea agreement. *Id.* at 162. It concluded "that the Michigan Court of Appeals had unreasonably applied the constitutional standards for

effective assistance of counsel laid out" in *Strickland* and *Hill*. *Id.* The Sixth Circuit affirmed, and the Supreme Court granted certiorari. *Id.*

The Court began by reviewing governing principles, including that "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process," *id.* (citing *Frye*, 132 S. Ct. at 1386–87, and *Padilla*, 130 S. Ct. at 1486). The Court noted that "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* (quoting *McMann*, 397 U.S. at 771). And finally, the Court said that "[i]n *Hill*, the Court held 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* (citing 474 U.S. at 58). Then, after noting that the parties had agreed that trial counsel's performance was deficient, the Court turned to *Strickland* prejudice. *Id.* at 163.

Here, the *Lafler* Court restated its rule that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* (citing *Frye*, 566 U.S. at 1388). Where "the ineffective advice led not to an offer's acceptance but its rejection," the Court determined, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court. . . ." *Id.* The Court rejected the government's argument that conviction at a fair trial rules out *Strickland* prejudice. *Id.* at 164. The Court concluded that Mr. Cooper had satisfied both *Strickland* prongs. *Id.* at 174. But for the first time in this series of cases, another issue remained—what effect might AEDPA have?

Under 28 U.S.C. § 2254(d)(1), the federal courts must defer to the state court's ruling unless it was contrary to or an unreasonable application of clearly established federal law, that is, a Supreme Court holding. The Court noted that "[a] decision is contrary to clearly established law if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Id.* at 173 (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Applying this standard, the Court concluded that the Michigan Court of Appeal's decision indeed was contrary to clearly established federal law, namely, *Strickland*. *Id.* at 173. It said that the state court had correctly identified the issue as ineffectiveness of counsel but had "failed to apply *Strickland* to assess it." *Id.* at 173. The Court required more than merely inquiring into whether the plea was rejected knowingly and voluntarily. *Id.* So now free from § 2254(d)(1)'s deferential review, the Court ruled for Mr. Cooper based on *Strickland*.

Finally, in *Lee v. United States*, 137 S. Ct. 1958 (2017), Mr. Lee was a permanent resident from South Korea, who had lived in the United States for most of his life. *Id.* at 1962. Over the years, he had built a successful restaurant business, but still chose to sell drugs as a side business. *Id.* at 1962–63. After being charged federally, Mr. Lee hired counsel, who began trying to negotiate a plea. *Id.* at 1963. Mr. Lee repeatedly asked his counsel about whether he would face deportation if found guilty. *Id.* After his counsel assured him he was not at risk of deportation, Mr. Lee pleaded guilty and was sentenced to a year and a day in prison. *Id.* Unfortunately for Mr. Lee, his counsel was mistaken about the immigration consequences—his drug

conviction qualified as an aggravated felony under the Immigration and Nationality Act, which required deportation. *Id.*

Mr. Lee filed a federal habeas petition under 28 U.S.C. § 2255, arguing ineffective assistance of trial counsel. *Id.* The district court denied relief, and the Sixth Circuit affirmed. *Id.* at 1964. The Sixth Circuit found that Mr. Lee's claim faltered on *Strickland*'s prejudice prong—that he had not shown a reasonable probability that he would have declined to plead guilty and insisted on a trial. *Id.* The Sixth Circuit relied primarily on the overwhelming evidence of guilt. *Id.* The Supreme Court granted certiorari.

The Court acknowledged that a defendant's prospects at trial are important when the prospects are what motivates a defendant to plead and forego trial. *Id.* at 1965. But the Court observed that Mr. Lee's calculation was not of that ilk. *Id.* Here, the counsel's error was not the sort that would affect the chances of success at trial (as would, say, a failure to file a suppression motion), but instead was the sort that "affected Lee's understanding of the consequences of pleading guilty." *Id.* The Court recognized the reality that a defendant lacking a viable defense faces long odds and so "will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Id.* at 1966. Even so, because the Court had "no reason to doubt the paramount importance Lee placed on avoiding deportation," and because "substantial and uncontroverted evidence" backed Mr. Lee's position that he would not have pleaded guilty absent his counsel's deficient performance, the Court ruled in his favor on *Strickland* prejudice. *Id.* at 1968–69.

19

### B. Souders's Claim and 28 U.S.C. § 2254(d)

#### 1. 18 U.S.C. §2254(d)(1): "Contrary to" Clearly Established Law

To begin, we see no fault in how the CCA applied *Strickland*'s legal framework. As *Strickland* directs, the CCA analyzed ineffectiveness using the two prongs—deficient performance and prejudice. Nor does Souders disagree. Instead he complains that the federal district court erred in its deferential review of the CCA's conclusion that he had not shown prejudice under *Strickland*.

"[A] state-court decision is contrary to clearly established law only 'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent.'" *Vreeland v. Zupan*, 906 F.3d 866, 875 (10th Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

To show *Strickland* prejudice, Souders needed to show that absent counsel's errors, he would have pleaded guilty and not taken his case to trial.[9] *Hill*, 474 U.S. at 59. Yet he equivocated on this point. No Supreme Court holding permits this

---

[9] The CCA did not decide whether Souders's counsel had provided constitutionally deficient performance. Ordinarily, we would review this question de novo, freed from any of § 2254(d)(1)'s constraints. But here we need not reach this question. Instead, we can decide Souders's petition on *Strickland*'s prejudice prong.

equivocation. In fact, as earlier mentioned, the Court in *Hill* faulted the petitioner for "not alleg[ing] in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." *Id.* at 60. Nor was this stray language. Twenty-seven years later, in *Frye*, the Court reviewed *Hill* and reemphasized that Mr. Hill "had not alleged that, even if adequate advice and assistance had been given, he would have elected to plead not guilty and proceed to trial." 566 U.S. at 141. Accordingly, we cannot say that fairminded jurists might debate the district court's conclusion that Souders has failed to demonstrate he is entitled to relief under the 'contrary to' component of §2254(d)(1).

## 2. "Unreasonable Application of" Clearly Established Law

An unreasonable application of Supreme Court holdings "must be 'objectively unreasonable,' not merely wrong, even 'clear error' will not suffice." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). A petitioner can obtain relief "under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 405, 427 (2014) (citing *Harrington*, 131 S. Ct. at 787).

Here, the Supreme Court holdings on ineffective counsel in the plea setting do not give a clearly established rule that applies to the facts of Souders's case to gain him relief. As mentioned, the Supreme Court cases run counter to Souders's position—at the very least they strongly suggest that a petitioner's equivocal testimony on whether he would have availed himself of a plea offer is insufficient.

Further, even had Souders unequivocally testified that he would have taken the plea deal offered, we would not take that subjective testimony on faith. Instead, we would also consider the objective facts in the record. *See Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (emphasis added)). Here, on balance, those facts do not favor Souders. For example, represented by the same counsel, Souders had previously obtained a plea offer and guilty plea in a petty-theft case. Obviously, Souders knew about the plea-agreement process and the possible benefits of obtaining a plea. Despite that, Souders never claimed to have asked his counsel about seeking a plea deal, despite knowing he faced a lengthy sentence without one. Further, Souders continued to maintain his factual innocence (i.e., that the victim had consented to the sexual intercourse), even at the post-conviction proceeding. By continuing to assert, even after his conviction, that the victim had consented to the sexual intercourse, Souders certainly raises doubt whether he could even have laid a sufficient factual basis to support a guilty plea to a sexual-offense felony. Under these circumstances, we cannot say that reasonable jurists could debate whether the federal district court erred in concluding, after giving the necessary deference to the CCA, that the CCA failed to reasonably apply clearly

22

established law when it concluded that Souders had failed to show *Strickland* prejudice.

### C. Souders's Habeas Claim Based on Post-Conviction Counsel's Alleged Ineffective Assistance

In addition, addressing Souders's other habeas ground, we conclude that the district court correctly ruled that § 2254(i) bars Souders's claim based on allegedly ineffective assistance of post-conviction counsel. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). To overcome this bar, Souders cites *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), which held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Souders's Opening Br. at 7–8. But *Martinez* doesn't apply here, because Souders did not default on his ineffective assistance-of-trial-counsel claim. Rather, his post-conviction counsel squarely raised the claim in the state court, and the state district court held an evidentiary hearing on the claim. *See Martinez*, 566 U.S. at 9. As such, § 2254(i) bars Souders's claim of ineffective assistance of post-conviction counsel, and reasonable jurists could not debate the point. *See Slack*, 529 U.S. at 484.

**CONCLUSION**

We deny Souders a COA and dismiss his appeal. We grant Souders's motion to proceed *in forma pauperis*.

Entered for the Court

Gregory A. Phillips
Circuit Judge